COMMONWEALTH *vs.* ULYSSES H.,[1] a juvenile.

No. 99-P-1972.

Plymouth. April 4, 2001. - September 7, 2001.

Present: LAURENCE, GILLERMAN, & DOERFER, JJ.

*Youthful Offender Act. Assault and Battery. Practice, Criminal,* Indictment. *Assault by Means of a Dangerous Weapon.*

At the jury-waived trial of the defendant as a "youthful offender" for assault and battery by means of a dangerous weapon in violation of G. L. c. 265, § 15A(*b*), the judge correctly denied the defendant's motion for a required finding of not guilty, where the prerequisite to a youthful offender indictment of G. L. c. 119, § 72(*a*), second par. — an offense committed by a child prior to his seventeenth birthday — was satisfied by the fact that the offense was committed prior to the defendant's seventeenth birthday and his arrest took place between his seventeenth and eighteenth birthdays. [499-501]

At the jury-waived trial of the defendant as a "youthful offender" for assault and battery in violation of G. L. c. 265, § 13A, the judge incorrectly denied the defendant's motion for a required finding of not guilty, where assault and battery was not a crime for which the defendant, "if he were an adult," could be sent to State prison, and the indictment was required to be dismissed as not falling within the provisions of G. L. c. 119, § 54. [501]

At the jury-waived trial of the defendant as a "youthful offender" for assault and battery by means of a dangerous weapon (shod foot), there was sufficient evidence on the basis of individual liability to convict the defendant, where the defendant was wearing sneakers on the night of the attack, and where, at oral argument, the defendant conceded that sneakers may constitute a dangerous weapon, and "[t]hat a dangerous weapon was used could be inferred from the victim's injuries." [501-502]

INDICTMENTS found and returned in the Superior Court Department on November 6, 1998.

After transfer to the Brockton Division of the Juvenile Court Department, the cases were heard by *Robert F. Murray*, J.

*Nadell Hill* for the defendant.

[1]The name is a pseudonym.

*Carolyn A. Burbine*, Assistant District Attorney, for the Commonwealth.

GILLERMAN, J. On November 6, 1998, the defendant was indicted as a "youthful offender"[2] for assault and battery in violation of G. L. c. 265, § 13A, and assault and battery by means of a dangerous weapon in violation of G. L. c. 265, § 15A(*b*). See G. L. c. 119, § 54. The defendant waived his right to a jury trial and was tried in Brockton Juvenile Court. At the close of the Commonwealth's case, the defendant's motions for a required finding of not guilty on each of the two indictments were denied, and he was found guilty on both indictments. The defendant was sentenced to eighteen months' probation on both charges. The appeal presents a number of issues.

The judge could have found the following facts. On August 22, 1998, Greg Bonomi (Greg) and his brother Larry Bonomi (Larry) invited a few friends to their house. At 10:15 P.M., a number of persons, including the defendant, arrived uninvited. Greg repeatedly asked the uninvited guests to leave; however, most refused to do so.

Larry, his girlfriend, and another friend, Matthew Gilroy, went onto the porch and asked the uninvited guests to leave. Someone threw a beer bottle at Gilroy, hitting him on the temple above his right eye. Gilroy went down the porch stairs to see who had thrown the bottle. As Gilroy turned the corner to the driveway, he felt a blow to the back of his head. He bent down and when he looked up, he saw four to five people coming toward him who looked "like they were going to jump [him]." He grabbed one person in the advancing group in an effort to shield himself. Gilroy was then attacked and "kicked from everywhere" while lying in the fetal position on the ground.

---

[2] "Youthful offenders are those who, while between the ages of fourteen and seventeen years, commit acts that would be punishable by commitment to State prison if committed by adults and have previously been committed to the Department of Youth Services, or have committed offenses which 'involve[] the infliction or threat of serious bodily harm,' or commit firearms offenses. See G. L. c. 119, § 54, as amended through St. 1996, c. 200, § 2." *Commonwealth* v. *Clint C.*, 430 Mass. 219, 223 (1999). See also G. L. c. 119, § 52 (defining "youthful offender"). "Once a juvenile is treated as a youthful offender, he is no longer given the protections and privileges afforded to delinquent children." *Clint C., supra* at 223. See generally R.L. Ireland, Juvenile Law § 2, at 8-9 (Supp. 2000).

Greg saw the defendant in the group that repeatedly kicked Gilroy. The defendant and the others kicked 'Gilroy twenty to twenty-five times, with the entire beating lasting approximately two minutes. Each assailant, including the defendant, kicked Gilroy two or three times.

Police Officer Paul Norton testified that, after the defendant was arrested, the defendant acknowledged that he was present at the party, that Gilroy pushed him and "started it with him," and that several other people were "punching and kicking the victim repeatedly." The defendant demonstrated how, in response, he hit Gilroy with a closed fist on the top of the head.[3] Additional facts are discussed where appropriate.

1. *Application of youthful offender act.* General Laws c. 119, § 54, the "youthful offender" statute, provides that the Commonwealth may proceed by indictment, as it did in this case, "if a person is alleged to have committed an offense . . . *while between the ages of fourteen and seventeen*" (emphasis added). See *Commonwealth* v. *Clint C.,* 430 Mass. 219, 222-223 (1999). The defendant was born on August 23, 1981; the attack occurred on August 22, 1998; and the defendant was arrested on August 25, 1998.

The defendant relies on such cases as *Apkin* v. *Treasurer & Receiver Gen.,* 401 Mass. 427, 428 n.3 (1988), and *Santiago* v. *Commonwealth,* 427 Mass. 298, 299 n.3 (1998), for the proposition that, "[u]nder the common law and the law of the Commonwealth, each year a person attains his or her next age on the day before the anniversary of his or her birth."[4] Consequently, the defendant argues, he had attained the age of seventeen on

---

[3]On direct examination, Officer Norton testified that the defendant admitted he hit Gilroy on the top of the head, and that Gilroy was then punched and kicked by a group of six to eight individuals. On re-direct, Officer Norton reviewed his report and testified that the defendant admitted to striking Gilroy on the top of his head after the victim was on the ground and the other assailants were punching and kicking him. The defendant claimed not to know the other individuals involved.

[4]The common-law rule can be traced back to seventeenth century England and is based on the principle that "a person is in existence on the day of his birth; thus, he has lived one year and one day on the first anniversary of his birth." *Velazquez* v. *State,* 648 So. 2d 302, 304 & n.3 (Fla. Dist. Ct. App. 1995). See also *Commonwealth* v. *Iafrate,* 527 Pa. 497 (1991). For a discussion on the use of the common-law rule as opposed to the birthday rule, see,

August 22, 1998, the date of the attack on Gilroy, and therefore could not properly be charged as a youthful offender. The Commonwealth suggests that we interpret the phrase "between the ages of" by looking to the defendant's birthday — that is, the anniversary of his birth — as the event which determines the defendant's age, in which case the defendant would not have attained the age of seventeen on the date of the attack, and the youthful offender indictment was available.[5]

The ambiguity of G. L. c. 119, § 54, is resolved by reference to a related and more comprehensive youthful offender provision, G. L. c. 119, § 72(*a*), second par., inserted by St. 1996, c. 200, § 13, which provides: "If a child commits an offense *prior to his seventeenth birthday*, and is not apprehended until *between his seventeenth and eighteenth birthday*, the court shall deal with such child in the same manner as if he has not attained his seventeenth birthday, and all provisions and rights applicable to a child under seventeen shall apply to such child" (emphasis added). These provisions avoid the ambiguity of § 54 by the unambiguous reference to an offense committed prior to the defendant's seventeenth birthday and an arrest between his seventeenth and eighteenth birthdays.

The chronological facts of this case fit precisely within § 72(*a*): the offense was committed one day prior to the defendant's seventeenth birthday, and the arrest was made after his seventeenth birthday and before his eighteenth birthday. The consequences are described in the final clauses of § 72(*a*), second par.: "the court shall deal with such child in the same manner as if he has not attained the seventeenth birthday, and all provisions and rights applicable to a child under seventeen shall apply to such child." In other words, the predicate to a youthful offender indictment — an

---

e.g., *Velazquez, supra* at 304; *State* v. *Hansen*, 304 Or. 169, 171-173 (1987). See generally Annot., Inclusion or Exclusion of the Day of Birth in Computing One's Age, 5 A.L.R.2d 1143 (1949). Contrast *Commonwealth* v. *Barrett*, 418 Mass. 788, 792 n.3 (1994) (noting, in dictum, that "[t]he complainant was born on January 7, 1969, and attained the age of sixteen on January 7, 1985").

[5]Both arguments assume, correctly, that once having attained the age of seventeen — however that date is determined — the offender may be tried as an adult. See G. L. c. 218, § 60 (the juvenile court department has exclusive jurisdiction of "juvenile offenders under the age of seventeen").

offense committed by a child prior to his seventeenth birthday — was satisfied in this case.

We turn, now, to the defendant's challenge to the assault and battery indictment, and to the provisions of G. L. c. 119, § 54 — the statutory basis for youthful offender indictments.[6] See St. 1996, c. 200, § 2. Under § 54, the Commonwealth may proceed by an indictment against a person between the ages of fourteen and seventeen if the person "is alleged to have committed an offense against the law of the commonwealth . . . which, if he were an adult, would be punishable *by imprisonment in the state prison . . .*" (emphasis added).

Assault and battery is not an offense for which an adult may be incarcerated in a state prison. The punishment provided by G. L. c. 265, § 13A, is "imprisonment for not more than two and one half years in a house of correction or by a fine of not more than five hundred dollars." In response, the Commonwealth argues that under § 54, third par., indictments brought under § 54 and "other criminal offenses [may be] properly joined under Massachusetts Rules of Criminal Procedure 9(a)(1). . . ."

The problem, however, is not whether the two indictments may be joined, but whether this youthful offender indictment is a valid indictment. As noted above, assault and battery is not a crime for which the defendant, "if he were an adult," may be sent to State prison, and the indictment must be dismissed as not falling within the provisions of c. 119, § 54.[7]

2. *Liability for assault and battery with a dangerous weapon.* The defendant argues that, because the trial judge did not specify whether he found the defendant guilty on a joint venture theory or an individual theory, there was insufficient evidence on the basis of individual liability to convict on the charge of assault and battery with a dangerous weapon (shod foot).

We disagree. A witness testified that the defendant was wear-

---

[6]The indictments describe the defendant as "[NAME] (YOUTHFUL OFFENDER)."

[7]In future cases, when both indictable and nonindictable offenses arise out of the same criminal conduct, the Commonwealth should join the complaint with the indictment and proceed to trial before a twelve-person jury on all charges. See G. L. c. 119, § 54.

ing sneakers on the night of the attack, and at oral argument the defendant conceded that sneakers may constitute a dangerous weapon. See *Commonwealth* v. *Marrero*, 19 Mass. App. Ct. 921, 922 (1984) ("Footwear, such as a shoe, when used to kick, can be a dangerous weapon"). Moreover, "[t]hat a dangerous weapon was used can be inferred from the victim's injuries." *Commonwealth* v. *Roman*, 43 Mass. App. Ct. 733, 736 (1997), *S.C.*, 427 Mass. 1006 (1998), quoting Stearn, Massachusetts Prosecutor's Guide 358 (1997). The evidence in this case was that the defendant's feet were shod with sneakers, that he kicked Gilroy repeatedly, and that Gilroy sustained multiple bruises and lacerations, two broken ribs, and a broken ankle. There was no error in the conviction. See *Commonwealth* v. *Polydores*, 24 Mass. App. Ct. 923, 924-925 (1987).

The judgment on the indictment for assault and battery with a dangerous weapon is affirmed. The judgment on the indictment for assault and battery is dismissed, the conviction and sentence thereon are vacated, and there shall be such further proceedings as the Commonwealth may elect to pursue.

*So ordered.*