## COMMONWEALTH *vs.* TERRANCE D. HAMPTON.

No. 04-P-75.

Plymouth. December 15, 2004. - July 18, 2005.

Present: KANTROWITZ, DOERFER, & KAFKER, JJ.

*Youthful Offender Act. Assault and Battery by Means of a Dangerous Weapon. Practice, Criminal,* Retroactivity of judicial holding, Assistance of counsel.

This court concluded that the rule of criminal law announced in *Commonwealth* v. *Quincy Q.*, 434 Mass. 859 (2001), requiring that a trial jury be presented with evidence that a juvenile charged under the youthful offender statute has met the factual predicates for treatment as a youthful offender, should not apply retroactively to a criminal defendant's conviction under a youthful offender indictment (all direct appeals of which were concluded before the decision in *Quincy Q.*), where the rule was not one of substantive law, did not alter the elements of the offense of being a youthful offender, and was not a rule involving "fundamental fairness" [29-33]; further, this court declined to apply retroactively the rule of law announced in *Ring* v. *Arizona*, 536 U.S. 584 (2002), to the defendant's claim challenging the trial judge's exercise of discretion in imposing his sentence [33-34].
Evidence presented to a grand jury was sufficient to indict a defendant under the youthful offender statute, G. L. c. 119, § 54. [34-35]
A criminal defendant failed to demonstrate that counsel had rendered ineffective assistance during his sentencing hearing. [35-36]

INDICTMENT found and returned in the Superior Court Department on July 3, 1998.

After the indictment was filed in the Plymouth Division of the Juvenile Court Department, the case was tried before *John P. Corbett*, J., and a motion for a new trial, filed on June 27, 2003, was heard by him.

*Cathleen E. Campbell* for the defendant.

*Therese M. Wright*, Assistant District Attorney, for the Commonwealth.

DOERFER, J. In *Commonwealth* v. *Quincy Q.*, 434 Mass. 859, 864-867 (2001), the Supreme Judicial Court, applying the

principles of *Apprendi* v. *New Jersey*, 530 U.S. 466, 490 (2000), determined that the Commonwealth must introduce evidence and persuade a trial jury beyond a reasonable doubt that a person indicted as a youthful offender meets the requirements set forth in G. L. c. 119, § 54, the youthful offender statute.[1] The defendant in this appeal claims that these jury trial rights should be applied retroactively to his conviction, all direct appeals of which were concluded before the decision in *Quincy Q.*[2] His motion for a new trial, which raised this and other issues, was denied. We affirm.

1. *Facts.* The defendant was convicted on October 21, 1998, by a jury on a youthful offender indictment of assault and battery by means of a dangerous weapon. Exercising his discretion under G. L. c. 119, § 58, to sentence the defendant to any term of years authorized by law for the crime of assault and battery by means of a dangerous weapon, instead of committing him to the custody of the Department of Youth Services (DYS) as a juvenile delinquent, the judge sentenced the defendant to from five to eight years in State prison.

At trial, the evidence presented at the close of the Commonwealth's case permitted the jury to find that the defendant had stabbed the victim three times in the chest during an altercation outside the victim's home. The victim was hospitalized in the intensive care unit on the night of the incident, but was discharged the next day. There was evidence from hospital records and from the victim as to the nature and extent of his injuries.

On June 27, 2003, the defendant filed a motion for new trial.

---

[1] These are that the defendant is between the ages of fourteen and seventeen, that the offense charged is a felony, and either that the defendant previously had been committed to the custody of the Department of Youth Services or that the acts upon which the indictment is based "involved 'the infliction or threat of serious bodily harm' " (or "involved certain enumerated firearms violations"). *Commonwealth* v. *Quincy Q.*, 434 Mass. at 862, quoting from G. L. c. 119, § 54. This burden only applies to those criteria that are in dispute, i.e., not stipulated to or not established as a matter of law (e.g., that the underlying offense is a felony). *Id.* at 866.

[2] *Quincy Q.* was decided August 15, 2001. The defendant's direct appeal was decided June 27, 2000, in a decision under Appeals Court Rule 1:28. *Commonwealth* v. *Hadley H.*, 49 Mass. App. Ct. 1114 (2000). Further appellate review was denied. See 432 Mass. 1110 (2000).

He claimed, among other things, that the Commonwealth's evidence was insufficient to establish that he was between the age of fourteen and seventeen and either that he had been previously committed to the DYS or that the acts forming the basis of the indictment involved the infliction or threat of serious bodily harm. He further claimed that the jury was not instructed that they needed to find such facts beyond a reasonable doubt. He argued that, even though his conviction and all direct appeals were final at the time *Quincy Q.* was decided, the rule announced in that case should be applied retroactively to his case.

2. *Discussion.* The only live youthful offender issue on which there was an arguable failure of evidence at the close of the Commonwealth's case at trial was the defendant's age.[3] Although there were no stipulations, it is a matter of law that assault and battery by means of a dangerous weapon is a felony[4] and that it includes by definition actual or threatened serious bodily harm. See, e.g., *Commonwealth* v. *Appleby*, 380 Mass. 296, 306-307 (1980); *Commonwealth* v. *Johnson*, 60 Mass. App. Ct. 243, 247 (2003). Proof of the crime of assault and battery by means of a dangerous weapon is ipso facto proof of actual or threatened serious bodily harm. Compare *Quincy Q.*, 434 Mass. at 862-864 (proof of indecent assault and battery is not in itself proof of actual or threatened serious bodily harm and, on the evidence in that case, did not as a matter of law support such a conclusion).

The Commonwealth and the defendant do not agree as to the sufficiency of the evidence of the defendant's age presented to the trial jury by the Commonwealth. We need only resolve that controversy if the rule announced in *Quincy Q.* is to be applied retroactively.

" 'Retroactive application of a rule of criminal law is indicated if (1) a case is on direct appeal or as to which the

___

[3]The defendant's testimony after the Commonwealth rested established that he was sixteen at the time of the offense. The parties agree that the Commonwealth, unless stipulated, must present such evidence as part of its case in chief to satisfy *Quincy Q.*, 434 Mass. at 866 & n.8, but the defendant claims the Commonwealth did not do so.

[4]General Laws c. 265, § 15A. See, e.g., *Commonwealth* v. *Kilburn*, 438 Mass. 356, 359 n.4 (2003); *Commonwealth* v. *Moore*, 50 Mass. App. Ct. 730, 733 (2001).

time for direct appeal has not expired when the new rule is announced, and (2) the issue was preserved at trial.' *Commonwealth* v. *Figueroa*, 413 Mass. 193, 202 (1992) [citations and footnote omitted]. 'However, . . . a defendant does not waive a constitutional issue by failing to raise it before the theory on which his argument is premised has been sufficiently developed to put him on notice that the issue is a live issue. Counsel need not be "clairvoyant." ' *Commonwealth* v. *Bowler*, 407 Mass. 304, 307 (1990)." *Commonwealth* v. *D'Agostino*, 421 Mass. 281, 284 (1995).

In *Commonwealth* v. *Figueroa*, 413 Mass. at 202, the court noted that the distinction between the retroactive application of new rules of criminal law to cases on collateral review and those still on direct appeal (or during the period that the time for direct appeal has not expired) is grounded in Federal constitutional law. The court in *Figueroa*, *supra*, citing *Commonwealth* v. *Bray*, 407 Mass. 296, 298-299 (1990), and *Griffith* v. *Kentucky*, 479 U.S. 314, 322-323 (1987), stated that "selective application of new rules" to cases on direct review "violates the principle of treating similarly situated defendants the same." Later, in *Schriro* v. *Summerlin*, 524 U.S. 348, 358 (2004), the United States Supreme Court stated that "[t]he right to jury trial is fundamental to our system of criminal procedure, and States are bound to enforce the Sixth Amendment's guarantees as we interpret them." At the same time, the Court explained that those guarantees, as defined in a new rule, are to be applied retroactively only under the circumstances the Court has defined. *Ibid.* Thus, questions of the retroactive application of Federal constitutional decisions in criminal cases are governed themselves by principles of Federal constitutional law.

The jury trial rights announced in *Apprendi* v. *New Jersey*, 530 U.S. at 490,[5] the authority upon which *Quincy Q.*, 434 Mass. at 864-865, was based, have been explicated further by the Supreme Court in *Ring* v. *Arizona*, 536 U.S. 584, 609 (2002). The specific question of the retroactive application of

---

[5] In *Apprendi*, *supra*, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt."

the *Apprendi* line of cases itself has been decided in *Schriro* v. *Summerlin, supra.* The majority opinion in *Schriro* clearly establishes that the constitutional right to a trial by jury on factual questions that form the predicate for a sentence of death is not retroactive and is inapplicable to cases that were not on direct review at the time *Ring* was decided. *Id.* at 358-359. In the case at bar, direct appellate review of the trial and of prior motions for new trial was completed by the time *Quincy Q.* was decided.[6]

*Schriro, supra,* was directly concerned with the question of the retroactive application of *Ring, supra,* to cases that were final on direct review. *Ring* held that a jury must determine aggravating factual questions that are a predicate for imposing the death penalty. 536 U.S. at 609. The Court in *Schriro, supra* at 355-358, reviewed its jurisprudence relating to the retroactive application of new rules of criminal law to convictions that were already final at the time the decision establishing the new rule issued. New substantive rules are applied retroactively. *Id.* at 351. These include rules "that narrow the scope of a criminal statute by interpreting its terms, as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish" (citation omitted). *Ibid.* On the other hand, new procedural rules do not generally apply retroactively. *Id.* at 352. "[W]e give retroactive effect to only a small set of ' "watershed rules of criminal procedure" implicating the fundamental fairness and accuracy of the criminal proceeding.' " *Ibid.,* quoting from *Saffle* v. *Parks,* 494 U.S. 484, 495 (1990). The new rule must be "fundamental" in the sense that, without it, "the likelihood of an accurate conviction is *seriously* diminished" (emphasis original). *Ibid.,* quoting from *Teague* v. *Lane,* 489 U.S. 288, 313 (1989). The majority in *Schriro, supra* at 352-358, rejected the arguments that the rule in *Ring, supra,* was substantive or that it was a "watershed" rule entitled to retroactive effect.

We apply this analysis to the rule of *Quincy Q.,* 434 Mass. at 864-866, here in question: that a trial jury must be presented

---

[6]*Blakely* v. *Washington,* 542 U.S. 296 (2004), a case on direct evidence, does not change this analysis. See *United States* v. *Booker,* 543 U.S. 220 (2005).

with evidence that a juvenile charged under the youthful of-
fender statute has met the factual predicates for treatment as a
youthful offender. This rule is not one of substantive law under
the analysis of the majority in *Schriro*, 542 U.S. at 352-354.
*Quincy Q.* did not create a new rule that made conduct criminal
that was not so before. 434 Mass. at 864-866. Nor did it change
the class of persons that the law punishes. *Schriro, supra* at
352. It was the Legislature that enacted a statute, G. L. c. 119,
§ 54, permitting, in certain circumstances, conduct that was not
criminal but only the basis for a finding of delinquency for the
class of persons under the age of seventeen to be treated as
criminal for persons between the ages of fourteen and seventeen.
See *Commonwealth* v. *Ulysses H.*, 52 Mass. App. Ct. 497, 500
(2001) (youthful offender statute applies to offenses committed
prior to defendant's seventeenth birthday).

Nor did *Quincy Q., supra*, alter the elements of the offense of
being a youthful offender. The fact that certain facts must be
found as a predicate for punishment and thus must be found by
a jury in order to satisfy the Sixth Amendment under *Ring* v.
*Arizona*, 536 U.S. at 609, does not mean that those facts are
part of the elements of the offense. See *Schriro*, 542 U.S. at
353. The Court in *Schriro, supra*, explained that the facts that
had to be found by a jury under *Ring, supra*, were only
characterized as "effectively" elements of the offense for
Federal constitutional purposes, invoking a right of jury
determination. But *Ring, supra*, did not alter the nature of the
acts constituting the crime of murder. This analysis controls our
interpretation of the decision in *Quincy Q., supra*. Although the
Federal Constitution requires that a jury determine the predicate
youthful offender facts for a child between the ages of fourteen
and seventeen, that requirement does not transform these factors
into elements of the crime.

Finally, we cannot see any distinction between the decisions
in *Quincy Q.* and *Ring* that would support the argument that
*Quincy Q.* was a "watershed rule" of criminal procedure
whereas *Ring* was not. *Schriro*, 542 U.S. at 352. If the need for
a jury to find facts in a death penalty case is not a rule involv-
ing "fundamental fairness," as *Schriro*, 542 U.S. at 352, teaches
us, then the rule established in *Quincy Q., supra*, requiring

a jury to determine the predicate facts relating to youthful offender status is not, either.

Since we conclude that the rule set forth in *Quincy Q.* is not to be applied retroactively, we need not resolve the substantive dispute between the Commonwealth and the defendant over the sufficiency of the evidence presented by the Commonwealth to the trial jury that the defendant was between the ages of fourteen and seventeen at the time of the offense.[7,8]

3. *Challenge to the judge's discretion in sentencing after a guilty finding.* Where a defendant is convicted under a youthful offender indictment the judge has the statutory authority to impose any sentence authorized by law, to commit him to the Department of Youth Services until he reaches the age of twenty-one, or to impose a combination of these dispositions. G. L. c. 119, § 58.[9]

---

[7]Because we conclude that the statute is not subject to retroactive application, our analysis ends here. See *Commonwealth* v. *Bray*, 407 Mass. at 303. Had we ruled otherwise, we would turn to the set of rules pertaining to the doctrine of waiver, and determine whether any of the exceptions incorporated in that doctrine entitled the defendant to relief. See generally *Commonwealth* v. *Bowler*, 407 Mass. at 307-308; *Commonwealth* v. *Amirault*, 424 Mass. 618, 637-639 (1997); *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. 10, 15-19 (1986).

[8]The defendant made passing reference to art. 12 of the Massachusetts Declaration of Rights in his motion for a new trial and in his principal brief. He argues for the first time in his reply brief that jury rights in regard to whether a juvenile should be treated as a youthful offender also derive from art. 12. He then asserts that, under art. 12, those rights would be more expansive than under the Federal constitution, but he does not marshal any authority or support in Massachusetts law for this assertion. Arguments not raised in a motion for a new trial and arguments raised for the first time in a reply brief are waived. See Mass.R.Crim.P. 30(c)(2), as appearing in 435 Mass. 1501 (2001); *Commonwealth* v. *Keevan*, 400 Mass. 557, 562 n.4 (1987); *Commonwealth* v. *Balliro*, 437 Mass. 163, 166 (2002). Here, the right to have a jury determine whether a juvenile should be treated as a youthful offender derives from Federal constitutional law. *Commonwealth* v. *Quincy Q.*, 434 Mass. at 864-865.

[9]General Laws c. 119, § 58, as amended through St. 1996, c. 200, § 5, prescribes that the judge hold a "sentencing recommendation hearing to determine the sentence by which the present and long-term public safety would best be protected. At such hearing, the court shall consider, but not be limited to, the following factors: the nature, circumstances and seriousness of the offense; victim impact statement; a report by a probation officer concern-

The defendant claims in substance that the judge is charged by the statute with determining facts that will determine whether the defendant's conduct is to be regarded as criminal and thus must be the province of a jury and not a judge. The defendant bases this claim on *Ring*, decided after *Quincy Q.* By-passing the merits of the claim, it depends on the retroactive effect of *Ring* and must fail for the reasons stated above under *Schriro*.[10]

4. *Grand jury issues*. For an indictment of an individual as a youthful offender to survive a motion to dismiss, the Commonwealth must present evidence to the grand jury on all elements required by the youthful offender statute. G. L. c. 119, § 54 (see note 1, *supra*). *Commonwealth* v. *Quincy Q.*, 434 Mass. at 862. See *Commonwealth* v. *Clint C.*, 430 Mass. 219, 225 (1999). Both *Quincy Q.*, *supra* at 863, and *Clint C.*, *supra*, involved the issue whether the evidence was sufficient to establish "the infliction or threat of serious bodily harm." In *Quincy Q.*, *supra* at 864, the evidence relating to an indecent assault and battery was insufficient; in *Clint C.*, *supra* at 225-226, the evidence relating to a statutory rape was sufficient.

---

ing the history of the youthful offender; the youthful offender's court and delinquency records; the success or lack of success of any past treatment or delinquency dispositions regarding the youthful offender; the nature of services available through the juvenile justice system; the youthful offender's age and maturity; and the likelihood of avoiding further criminal conduct. In addition the court may consider any other factors it considers relevant to disposition. No such sentence shall be imposed until a presentence investigation report has been filed by the probation department and made available to the parties no less than seven days prior to sentencing."

[10]We note in passing, however, that by being found guilty by the jury of the charges in the youthful offender indictment and by the jury having been presented with evidence sufficient to establish the defendant as a youthful offender, the defendant has been found guilty of a crime. The Legislature has simply provided discretion to the judge to treat youthful offenders who are indicted and convicted of a crime within the juvenile justice system. Such treatment does not render defendant's conviction noncriminal. Nor does the discretionary decision of the judge to sentence him to any sentence allowed by law in the adult system, even though based on evidence of factors relevant to disposition as specified in the statute, render that a decision to enhance a penalty beyond that provided by law. It is a classic exercise of judicial discretion to sentence an offender within the limits of the ranges provided by law. Thus, no further right to a jury determination of the facts relevant to an appropriate sentence appears to be implicated.

Here,[11] the grand jury was informed of the defendant's date of birth; the crime charged was a felony; and the circumstances presented to the grand jury clearly indicated serious bodily harm.

5. *Sentencing hearing.* At his sentencing hearing, certain documents relating to the defendant's prior history with the DYS were considered by the judge. The defendant's counsel initially objected on the grounds that he had been furnished with those records only five minutes before the sentencing hearing began. There was a colloquy between the judge, the prosecutor, and defense counsel at the bench, during which the judge asked defense counsel why he had not gone to the DYS to examine the defendant's file, as it was required of the judge to consider the defendant's prior record on the question of sentencing.[12] The record does not support the defendant's contention on appeal that the judge denied him a continuance. While the judge was considering what to do in response to the objection, defense counsel, at the insistence of his client, withdrew the objection and requested that the judge proceed to sentencing. The judge provided time for defendant's counsel to review the documents. See *Commonwealth* v. *Steinmeyer*, 43 Mass. App. Ct. 185, 189-190 (1997). Even now, the defendant does not show how he was prejudiced by any lack of time to review the documents further. According to the finding of the judge who denied the defendant's motion for a new trial, the documents "revealed little more than was readily apparent from a review of [the defendant's] prior record provided by probation and summarized in the pre-sentence report." The defendant has not pointed to anything contrary on appeal. There was no inef-

[11]*Clint C.*, *supra*, was decided August 31, 1999, after the defendant's trial but before resolution of his appeal. We decline to explore issues relating to retroactivity and whether claims relating to defects in the grand jury were properly raised or preserved at trial or waived during the appellate process because the substance of the claim is so obviously without merit.

[12]As stated in note 9, *supra*, under G. L. c. 119, § 58, the judge is required to consider, among other factors, "a report by a probation officer concerning the history of the youthful offender; the youthful offender's court and delinquency records; [and] the success or lack of success of any past treatment or delinquency dispositions regarding the youthful offender."

fective assistance of counsel. Compare *Commonwealth* v. *Lykos*, 406 Mass. 135, 146 (1989).

> *Order denying motion for new*
> *trial affirmed.*