COMMONWEALTH *vs.* ANDREW W. KILBURN.

Suffolk. October 11, 2002. - January 3, 2003.

Present: MARSHALL, C.J., GREANEY, COWIN, SOSMAN, & CORDY, JJ.

*Felony-Murder Rule. Armed Assault in a Dwelling. Practice, Criminal,* Assistance of counsel. *Waiver. Joint Enterprise.*

On a motion for a new trial by which the defendant sought to overturn his felony-murder conviction because the predicate felony, armed assault in a dwelling, merged with the murder itself, the defendant failed to demonstrate that the judge's failure to distinguish between two separate assaults on the victim, in his felony-murder instructions to the jury, created a substantial risk of a miscarriage of justice, where, although the judge's failure to make the distinction was both erroneous and prejudicial, the error, based on the evidence presented, had no material impact on the outcome of the trial. [360-363]

The defendant in a criminal case was given adequate notice by the Commonwealth of the nature of the charges against him and the potential theories on which the Commonwealth might proceed. [363]

INDICTMENT found and returned in the Superior Court Department on September 30, 1992.

Following review by this court, 426 Mass. 31 (1997), motions for release from unlawful restraint and for reconsideration were heard by *Vieri Volterra,* J.

A request for leave to appeal was considered by *Greaney,* J.

*Stephen Hrones* for the defendant.

*Jane A. Sullivan,* Assistant District Attorney, for the Commonwealth.

COWIN, J. In 1993, a jury convicted the defendant of murder in the first degree based on a theory of felony-murder and joint venture. We affirmed the conviction and denied relief after reviewing the entire record pursuant to G. L. c. 278, § 33E. See *Commonwealth* v. *Kilburn,* 426 Mass. 31, 38 (1997). In June, 2001, the defendant filed a motion for release from unlawful restraint pursuant to Mass. R. Crim. P. 30 (a), 378 Mass. 900

(1979). The motion was denied by the trial judge, as was a motion for reconsideration. The defendant then sought leave to appeal by petitioning a single justice of this court pursuant to the "gatekeeper" provision of G. L. c. 278, § 33E.[1] The single justice allowed the defendant's petition with regard to two issues: (1) whether the defendant may be convicted of joint venture felony-murder when the acts constituting the predicate felony, armed assault in a dwelling with intent to commit a felony, G. L. c. 265, § 18A, also caused the death of the victim; and (2) whether the defendant waived this issue by failing to raise it in his direct appeal. We affirm the denial of the motion for a new trial.

The jury could have found the following facts relating to the defendant's current claim. On September 2, 1992, an unknown gunman shot and killed Charles Laliberte in his apartment in the South Boston section of Boston. Alex Loer, the only witness to the shooting, was visiting Laliberte when an assailant, brandishing a handgun, burst into the apartment, pushing Laliberte away from the doorway. When the gunman noticed Loer he first appeared confused, and then began to order both Loer and Laliberte about the apartment. After approximately one minute of seemingly random directions, the gunman ordered Loer into the bedroom. Five seconds later Loer heard the sound of a gunshot. When Loer looked over his shoulder Laliberte was dead, shot in the back of the head, and the gunman had departed.

The gunman was seen escaping in an automobile driven by another person. The investigation quickly focused on the defendant, who owned the automobile. He admitted being present in his car when the incident occurred and made several other incriminating statements. After he was arrested and given the Miranda warnings, the defendant told the police that he had

---

[1] A defendant convicted of murder in the first degree and denied relief under G. L. c. 278, § 33E, must seek leave from a single justice of this court for all further appeals. *Lykus* v. *Commonwealth,* 432 Mass. 160, 162 (2000). Although the defendant here filed a motion styled as one for release from unlawful restraint, the "gatekeeper" provision of § 33E applies to "any motion" filed in the Superior Court after § 33E review. *Id.* We treat the defendant's motion for release from unlawful restraint as one for a new trial.

not realized that the gunman had shot Laliberte while in the apartment; "they had just gone there to 'do' " Laliberte, and he "should have never died."

1. *The Defendant's Merger Claim.*

The defendant asks us to overturn his felony-murder conviction because the necessary predicate felony, armed assault in a dwelling, G. L. c. 265, § 18A,[2] merged with the murder itself. The defendant's claim is complicated by the fact that the evidence presented to the jury indicates that the gunman (and hence the defendant, who is liable as a joint venturer) committed not one, but two separate armed assaults on Laliberte,[3] and both were encompassed within the Commonwealth's theory of the crime.

The first armed assault on Laliberte occurred immediately after the gunman entered Laliberte's apartment. According to Loer's uncontested testimony, Laliberte opened the door for an individual who immediately brandished a gun and pushed the victim backward, thereby committing an armed assault in a dwelling. At this point, the gunman noticed Loer for the first time and (again according to Loer's uncontested testimony) stopped in confusion. At that time the elements of an assault, namely objectively menacing conduct intended to arouse fear or the apprehension of imminent bodily harm, see *Commonwealth v. Gorassi*, 432 Mass. 244, 247 (2000), had already been satisfied. After a short interlude, during which the gunman ordered both Loer and the victim about the apartment, the gunman shot the victim in the back of the head, thus violating § 18A a second time.

---

[2]General Laws c. 265, § 18A, provides in relevant part:

"Whoever, being armed with a dangerous weapon, enters a dwelling house and while therein assaults another with intent to commit a felony shall be punished by imprisonment in the state prison for life, or for a term of not less than ten years. No person imprisoned under this paragraph shall be eligible for parole in less than five years." ·

[3]The evidence also indicates that the defendant assaulted Loer. This assault could also have constituted an independent predicate felony for a felony murder conviction, had the Commonwealth chosen to present the theory at trial.

The doctrine of felony-murder provides that "the conduct which constitutes the felony must be 'separate from the acts of personal violence which constitute a *necessary* part of the homicide itself' " (emphasis added). *Commonwealth* v. *Gunter*, 427 Mass. 259, 272 (1998), quoting *Commonwealth* v. *Quigley*, 391 Mass. 461, 466 (1984), cert. denied, 471 U.S. 1115 (1985). Absent this requirement, the assault that precedes every killing would serve as the predicate for felony-murder in the first degree, and the distinction between degrees of murder would be lost. Whether a particular felony is sufficiently independent from a killing to support a felony-murder conviction is a question that defies categorical analysis; we therefore review claims of merger on a "case-by-case basis with reference to specific facts." *Commonwealth* v. *Gunter, supra* at 275 n.15. In the case of an armed assault in a dwelling, merger occurs when "the acts constituting that assault also cause the homicide." *Id.* at 273-274.

While the act of shooting Laliberte (the second assault on the victim) clearly caused the homicide in this case, the gunman's brandishing of a pistol with the intention of arousing fear in Laliberte (the first assault on the victim) did not. Laliberte died of a gunshot wound; he did not die of fright. Applying the causation test for merger articulated in the *Gunter* case, we conclude that, while the second of the two assaults on Laliberte merged with the murder, the first did not.[4]

This determination, by itself, does not resolve the defendant's claim. The judge did not distinguish between the two possible violations of § 18A when he charged the jury on felony-

---

[4]Although the defendant has not contested the propriety of his conviction under G. L. c. 265, § 18A, we note that the judge correctly instructed the jury that, in order to find the defendant guilty of armed assault in a dwelling as a joint venturer, the jury had to find that the defendant shared the gunman's intent to enter a dwelling while armed and assault the victim with the intent to commit a felony. See *Commonwealth* v. *Smith*, 42 Mass. App. Ct. 906, 906-907 (1997). The judge also correctly explained to the jury that the intended felony for the intent prong of the armed assault offense could be either assault and battery by means of a dangerous weapon, see *Commonwealth* v. *Donoghue*, 23 Mass. App. Ct. 103, 112-113 (1986), cert. denied, 481 U.S. 1022 (1987), or assault by means of a dangerous weapon. See *Commonwealth* v. *Smith, supra* at 907. The record provides strong evidentiary support for a jury's finding of shared intent to commit either intended felony.

murder.[5] Thus we are unable to determine whether the jury found that the predicate felony for the felony-murder was the first assault on Laliberte, the second assault on Laliberte, or both.

*2. Standard of Review.*

The defendant twice waived his current claim: he failed to raise the issue of merger when objecting to the judge's instructions,[6] and he failed to raise a merger claim on his direct appeal. See *Rodwell* v. *Commonwealth*, 432 Mass. 1016, 1018 (2000). We therefore examine the defendant's case solely to ensure that the judge's error did not give rise to a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Randolph, ante* 290, 297 (2002). This is a heavy burden. "Our power to upset a completely adjudicated conviction on this ground is an extraordinary one which should only be exercised in the most unusual circumstances." *Commonwealth* v. *Amirault*, 424 Mass. 618, 646 (1997).

The defendant attempts to avoid the consequences of his repeated waivers by representing his claim as one of ineffective assistance of counsel: he alleges that both his trial and appellate counsel's failure to raise the issue at the appropriate time amounted to ineffective assistance. This argument must fail. As we explained in *Commonwealth* v. *Randolph, supra* at 295, every waived claim can be couched in ineffectiveness terms. Were we to permit a defendant to resurrect a waived claim simply by alleging that his counsel was ineffective, the waiver doctrine itself, a crucial component of our legal system, would quickly become meaningless. *Id.* at 295-296.

We therefore analyze the defendant's claim under the substantial risk standard. In doing so:

" 'We review the evidence and the case as a whole,' *Commonwealth* v. *Azar*, [435 Mass. 675, 687 (2002)] and

---

[5]Neither the Commonwealth nor the defendant requested that the judge make a distinction in his charge.

[6]Although trial counsel did allude to *Commonwealth* v. *Quigley*, 391 Mass. 461 (1984), cert. denied, 471 U.S. 1115 (1985), during an argument on shared intent, and *Quigley* does discuss the felony-murder merger doctrine, *id.* at 465, the defendant concedes that the issue of merger was not properly raised at trial.

ask a series of four questions: (1) Was there error? *Id.* at 682-684. (2) Was the defendant prejudiced by the error? *Id.* at 687-688. (3) Considering the error in the context of the entire trial, would it be reasonable to conclude that the error materially influenced the verdict? *Id.* at 687-688. *Commonwealth* v. *Alphas*, 430 Mass 8, 13-14 (1999). *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. 10, 21 (1986) ('Where evidence of guilt is strong and one-sided, it is generally concluded that no substantial risk exists of a miscarriage of justice'). (4) May we infer from the record that counsel's failure to object or raise a claim of error at an earlier date was not a reasonable tactical decision? See *Commonwealth* v. *Johnson*, 374 Mass. 453, 464-465 (1978). See also *Commonwealth* v. *Miranda, supra* at 22. Only if the answer to all four questions is 'yes' may we grant relief." *Commonwealth* v. *Randolph, supra* at 297-298.

Applying this test, we first ask whether the judge's failure to distinguish between the two previously described assaults in his felony-murder instruction was erroneous. The answer to that question is "yes." The judge did not explain the doctrine of merger to the jury and they were therefore not alerted that, although they had heard evidence indicating the existence of two consecutive assaults on the victim, they could not base a felony-murder conviction on an assault that merged with the fatal shooting. See *Commonwealth* v. *Quigley, supra* at 466.

The error was also prejudicial. As explained earlier, this omission means that we cannot be certain that the jury did not convict the defendant of felony-murder on the basis of the second, merged, assault. See *Commonwealth* v. *Smith*, 42 Mass. App. Ct. 906, 907-908 (1997). An instructional error of this type might, in the proper circumstances, give rise to a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Amirault, supra* at 647 n.21 (instructional error may produce "a substantial risk that a person has been convicted for a course of conduct that is not criminal at all"); *Commonwealth* v. *Smith, supra* at 906-907.

We therefore proceed to the third step and examine the record to determine whether the judge's error may have materially influenced the verdict. This step is satisfied only if "we are left

with uncertainty that the defendant's guilt has been fairly adjudicated." *Commonwealth* v. *Randolph, supra* at 294-295, quoting *Commonwealth* v. *Azar,* 435 Mass. 675, 687 (2002). Our examination of the record must leave us with "a serious doubt whether the result of the trial might have been different had the error not been made." *Commonwealth* v. *Azar, supra* at 686-688. Although we do not weigh evidence in making our determination, see *id.* at 689, if the record in this case conclusively establishes the existence of the first, unmerged, assault on the victim, then we cannot say that the judge's error would have had a material effect on the trial. See *Commonwealth* v. *Alphas,* 430 Mass. 8, 13-14 (1999); *Commonwealth* v. *Miranda,* 22 Mass. App. Ct. 10, 21 (1986) ("Where evidence of guilt is strong and one-sided, it is generally concluded that no substantial risk exists of a miscarriage of justice"). Cf. *Commonwealth* v. *Grandison,* 433 Mass. 135, 146-147 (2001) (admission of evidence of postarrest struggle at trial for resisting arrest created substantial risk of miscarriage of justice where evidence of prearrest resistance did not conclusively establish guilt); *Commonwealth* v. *Smith, supra* at 907-908 (failure to specify between merged and unmerged predicate felonies in jury instructions created substantial risk of miscarriage of justice where unmerged offense was not conclusively established).

The evidence presented at trial conclusively establishes the existence of the first assault. Loer's account of the gunman's initial assaultive behavior on the victim, the armed threat to Laliberte, was unequivocal and uncontested. Additionally, Loer provided the only evidence of the events that took place inside Laliberte's apartment on September 2, 1992. The jury found the defendant guilty on the basis of Loer's testimony alone, and we can therefore conclude that the jury believed Loer's testimony beyond a reasonable doubt. See *Commonwealth* v. *Randolph, supra* at 300-301; *Commonwealth* v. *Roderick,* 429 Mass. 271, 278-279 (1999). We are therefore able to state with certainty that, had the judge properly distinguished between the two assaults on Laliberte in his felony-murder instructions, the jury would have convicted the defendant of felony-murder on the basis of the first, unmerged violation of § 18A.

Having determined, based on the evidence presented, that the judge's error had no material impact on the outcome of the trial, the defendant has failed to demonstrate that the error created a substantial risk of a miscarriage of justice.

One other issue must be addressed. The defense contends on appeal that the Commonwealth cannot prevail on appeal on a theory not properly presented to the trial court. See *Dunn* v. *United States*, 442 U.S. 100, 106-107 (1979); *Cola* v. *Reardon*, 787 F.2d 681, 694-695 (D. Mass.), cert. denied, 479 U.S. 930 (1986). See also *Commonwealth* v. *Tyree*, 387 Mass. 191, 213 (1982), cert. denied, 459 U.S. 1175 (1983). The Commonwealth has not done so here. From indictment to closing argument, the prosecutor consistently maintained that the defendant was guilty of both murder and an armed assault on Laliberte under a joint venture theory. The defendant was thus given adequate notice of the nature of the charges against him and the potential theories on which the Commonwealth might proceed. See *Commonwealth* v. *Gunter, supra* at 274. Although the prosecutor did not distinguish between the two separate assaults on Laliberte in his closing argument, due process does not require that the Commonwealth present its legal theory of guilt (particularly one advanced only in the alternative) in such detail. See *Commonwealth* v. *Silanskas*, 433 Mass. 678, 691-692 (2001). It is the role of the judge, not the prosecutor, to instruct the jury on how particular elements of a crime may be satisfied.

The order denying the motion for release from unlawful restraint is affirmed.

*So ordered.*