## COMMONWEALTH *vs.* CORIE STOKES.

Bristol. April 4, 2011. - August 1, 2011.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, & DUFFLY, JJ.

*Homicide. Felony-Murder Rule. Practice, Criminal,* New trial, Instructions to jury. *Armed Home Invasion.*

INDICTMENTS found and returned in the Superior Court Department on September 14, 1999.

Following review by this court, 440 Mass. 741 (2004), a motion for a new trial, for reduction of the verdict to murder in the second degree and for resentencing, filed on January 2, 2009, was heard by *Gary A. Nickerson,* J.

A request for leave to appeal was allowed by *Botsford,* J., in the Supreme Judicial Court for the county of Suffolk.

*Daniel Klubock* for the defendant.

*David J. Gold,* Assistant District Attorney, for the Commonwealth.

BOTSFORD, J. The defendant, Corie Stokes, was convicted of felony-murder in the first degree based on the predicate felony of attempted armed robbery, and related crimes. The charges concerned the 1999 shooting death of Cecil Smith inside the home of Smith's girl friend, Crystal Rego. This court affirmed his convictions. *Commonwealth* v. *Stokes,* 440 Mass. 741 (2004) (*Stokes*). Before us is the defendant's appeal from the denial of

his postappeal motion for a new trial. He contends that the jury should have been instructed that an alternative underlying felony for the felony-murder charge was armed home invasion committed with a firearm, a crime that at the relevant time did not carry a life sentence and therefore could have served as the predicate for felony-murder in the second degree. We affirm the denial of the defendant's motion for a new trial.

1. *Background.* As recited in more detail in *Stokes*, on the evening of August 9, 1999, Rego opened the door of her apartment in Fall River in response to a knock; the defendant and another man stood at the threshold, "waving guns" and pointing them at Rego.[1] *Id.* at 742-743, 748. Within "a matter of seconds," a shot was fired into the apartment and killed Smith. *Id.* at 742-743, 746 n.4. Shortly after the murder, Dana Mazyck overheard the defendant and two other men say they had gone to rob someone, had thought the victim had a gun, and so had shot him.[2] *Id.* at 743.

Following these events, the defendant and his codefendant, Michael Holloway, were charged with murder in the first degree, armed home invasion committed with a firearm (armed home invasion) against Smith,[3] unlawful possession of a firearm, and conspiracy to commit armed robbery. *Id.* at 742 & nn.1, 2, 746-747. In connection with the murder charge, the trial judge instructed the jury on theories of deliberate premeditation and felony-murder in the first degree with an attempted armed rob-

---

[1]Evidence was sufficient to conclude that the arm of at least one assailant crossed the threshold of the apartment, thus satisfying the entry element of armed home invasion. *Commonwealth* v. *Stokes*, 440 Mass. 741, 748-749 (2004) (*Stokes*).

[2]The defendant claims that the evidence at trial of attempted armed robbery was "extremely slim," and the evidence overall more plausibly may have suggested that the purpose of the attack was not robbery but rather to get rid of a rival drug dealer. In particular, he argues that Dana Mazyck was not a reliable witness because, by Mazyck's own admission, he was intoxicated by marijuana at the time he overheard the statements, he withheld information from the police, and his memory of the evening was spotty. See *Stokes*, 440 Mass. at 743 & n.3.

[3]The indictment charging armed home invasion alleged that the defendant entered the dwelling of Crystal Rego, but identified Cecil Smith, Jr., as the victim of the crime — that is, the victim of the use of force, threatened use of force, or intentional injury that is an element of the crime. See G. L. c. 265, § 18C, as amended by St. 1998, c. 180, § 57 (§ 18C).

bery as the predicate felony. *Id.* at 749. The judge also instructed on murder in the second degree but did not include an instruction on felony-murder in the second degree. The jury found the defendant guilty of murder in the first degree on the theory of felony-murder only, not deliberate premeditation. The jury also returned guilty verdicts on the charges of armed home invasion, conspiracy to commit armed robbery, and unlawful possession of a firearm. *Id.* at 742 & n.1.

In 2008, the defendant filed a motion for a new trial.[4] In it he argued for the first time that the judge erred in failing to give an instruction on felony-murder in the second degree with armed home invasion, G. L. c. 265, § 18C, as amended by St. 1998, c. 180, § 57 (§ 18C), as the predicate felony.[5] The judge denied the motion in relevant part.[6] The judge concluded that the armed home invasion indictment, expressly naming Smith as the victim, see note 3, *supra*, could not be the predicate felony underlying the felony-murder of Smith because it effectively merged with the homicide. See *Commonwealth* v. *Gunter*, 427 Mass. 259,

---

[4]The motion included as well requests for reduction of the verdict to murder in the second degree and resentencing.

[5]At the time of the murder at issue in this case, § 18C provided that a person committing the crime of home invasion while armed with a firearm, shotgun, rifle, machine gun, or assault weapon was subject to a maximum sentence of twenty years' imprisonment, whereas one who committed the crime while armed with any other dangerous weapon could receive a life sentence. See G. L. c. 265, § 18C, as amended by St. 1998, c. 180, § 57; *Commonwealth* v. *Burton*, 450 Mass. 55, 58-59 (2007) (*Burton*); *Commonwealth* v. *Brown*, 431 Mass. 772, 775, 779-781 (2000). Because armed home invasion committed with a firearm (armed home invasion) is an inherently dangerous felony, see *Commonwealth* v. *Doucette*, 430 Mass. 461, 468 n.6 (1999), but was not punishable by life imprisonment, it could have served as the predicate felony for felony-murder in the second degree. *Burton*, *supra* at 57-60. We note that § 18C was amended again in 2004, and currently provides that one who commits the crime while armed with a firearm may receive a maximum sentence of life imprisonment. G. L. c. 265, § 18C, as amended through St. 2004, c. 150, § 17.

[6]The judge allowed the defendant's request for resentencing on the conviction of armed home invasion against Smith (see note 4, *supra*) and otherwise denied the motion. There is no question that the original sentence the defendant received on the armed home invasion charge was legally impermissible. It was a sentence of from twenty to twenty-five years, whereas under the applicable version of § 18C, the maximum sentence that could be imposed was twenty years. See note 5, *supra*. The sentence was not a matter that was raised or addressed in the defendant's direct appeal. See *Stokes*, 440 Mass. at 742, 751.

270-274 (1998). A single justice allowed the defendant's gate-keeper petition seeking to appeal from the denial of the motion for a new trial.[7] See G. L. c. 278, § 33E.

2. *Instruction on felony-murder in the second degree.* In this appeal, the defendant first argues that the charged offense of armed home invasion, as set out in the indictment naming Smith as the victim, could have served as a predicate felony for felony-murder in the second degree, despite potential conflicts with the merger doctrine.[8] However, his principal argument focuses on a different theory: that an *uncharged* armed home invasion involving threatened use of force against Rego — the waving and pointing of a gun at her — could have served as the predicate felony for a charge of felony-murder in the second degree. Therefore, the defendant contends, an instruction on felony-murder in the second degree should have been given.

Felony-murder in the second degree consists of a homicide

---

[7]The Commonwealth asserts that because he did not request an instruction on felony-murder in the second degree at trial and did not raise the issue on direct appeal, the defendant has waived the claim he now argues. The defendant responds that no waiver occurred, reasoning that until this court decided *Burton*, 450 Mass. at 57-60, in 2007 — well after both his trial and his direct appeal — he could not have been expected to argue that armed home invasion as defined in § 18C, as amended by St. 1998, c. 180, § 57, the version of the statute that applied to the defendant, carried a maximum twenty-year sentence and therefore could be the predicate for felony-murder in the second degree only, and not for felony-murder in the first degree. See *id.* We acknowledge that significant confusion has surrounded the meaning of this version of § 18C — confusion shared by attorneys, trial judges, and this court. The single justice, as gatekeeper, has allowed the defendant to raise his claim, and therefore we will consider whether the error asserted by the defendant created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Randolph*, 438 Mass. 290, 293 n.7, 294-295 (2002).

[8]The defendant contends that the pointing of guns at Smith constituted an "imminent use of force" within the meaning of the armed home invasion statute, § 18C, that was separate from and did not merge with the use of force that killed Smith. We disagree. Where Rego testified the entire incident occupied "a matter of seconds," *Stokes*, 440 Mass. at 746 n.4, any threatened use of force against Smith himself was part of the shooting that killed him. Therefore, under the merger doctrine, the armed home invasion with respect to Smith could not form a predicate felony for a felony-murder conviction. See *Commonwealth* v. *Gunter*, 427 Mass. 259, 270-274 (1998). Contrast *Commonwealth* v. *Kilburn*, 438 Mass. 356, 358-359 (2003) (defendant's brandishing of gun and pushing victim immediately on entering apartment completed crime of armed assault in dwelling, G. L. c. 265, § 18A, and did not merge with fatal shooting of same victim that followed "[a]fter a short interlude . . .").

committed during the commission or attempted commission of a felony with a maximum sentence of less than life imprisonment, provided that the predicate felony is either inherently dangerous or committed in conscious disregard of risk to human life. See *Commonwealth* v. *Burton*, 450 Mass. 55, 57 (2007) (*Burton*). For a felony-murder instruction to be proper, evidence must support the inference that the victim's death was "a natural and probable consequence" of the predicate felony. See *Commonwealth* v. *Cruz*, 430 Mass. 182, 185 (1999). The defendant need not be indicted separately on the predicate felony. See *Commonwealth* v. *Matchett*, 386 Mass. 492, 497-498 & n.7 (1982).

We accept the defendant's point that the trial evidence was sufficient for the jury to consider whether Smith was killed during the commission of an armed home invasion against Rego.[9] However, it is also the case that the only indictment charging the defendant with armed home invasion specifically named Smith as the victim; there was no separate indictment for armed home invasion naming Rego as the victim. It is true, as previously noted, that the felony on which a charge of felony-murder is premised may be uncharged, so long the evidence supports it. But where the felony later advanced by a defendant as the predicate for an instruction on felony-murder in the second degree is not itself the subject of a separate indictment, no error occurs if the trial judge does not charge the jury on it even though there may be sufficient evidence supporting such a charge — at least where, as here, no party requested such an instruction or even brought the issue to the judge's attention at trial. Cf. *Commonwealth* v. *Berry*, 431 Mass. 326, 337-338 & n.15

---

[9]A person commits armed home invasion if he "knowingly enters the dwelling place of another knowing or having reason to know that one or more persons are present within . . . while armed with a dangerous weapon, [and] uses force or threatens the imminent use of force upon any person within such dwelling place whether or not injury occurs, or intentionally causes any injury to any person within such dwelling place." § 18C. To find that the assailants "threaten[ed] the imminent use of force" on Rego, the jury would have needed to conclude that she was a target of a threat and not just a bystander during an attack on Smith. Given the short duration of the entire incident, we have some doubt on this point. However, because the assailants pointed guns at her, see *Stokes*, 440 Mass. at 748, and because the Commonwealth's theory of the case was that Rego was the intended victim of the attempted armed robbery, we accept that the evidence was sufficient for the jury to find that the assailants threatened Rego with the imminent use of force.

(2000), citing *Commonwealth* v. *Roberts*, 407 Mass. 731, 737 (1990) (absent request, judge not required to charge on lesser included offense).

A contrary rule has an obvious potential to undermine the policy of finality of criminal convictions. It is likely that in almost every case where a defendant has been convicted of felony-murder in the first degree predicated on a felony punishable by life imprisonment, an argument can later be made that the trial evidence also supported the existence of one or more uncharged felonies not punishable by life imprisonment, and that therefore the jury should have been instructed on felony-murder in the second degree. Limiting the availability of such a claim to cases where the felony later advanced as presenting a basis for a charge of felony-murder in the second degree was the subject of a separate indictment may strike an appropriate balance. The existence of the indictment puts the Commonwealth (as well as the trial judge) on notice that at least there is a theoretical possibility of conviction of felony-murder in the second degree.[10] Cf. *Commonwealth* v. *Amirault*, 424 Mass. 618, 637 (1997) (discussing community's interest in finality in criminal justice system, balanced against need to provide relief where there is "possibility of error and of grave and lingering injustice").

3. *Armed assault.* The defendant argues that his separate conviction of armed home invasion merges with his felony-murder conviction and must be vacated. The claim, not part of the motion for a new trial, is not properly before the court and we need not consider it.[11]

*Order denying motion for a new trial affirmed.*

[10]There are cases where a defendant has been convicted of felony-murder in the first degree and where this court has ordered a new trial or reduction in the degree of murder due to the absence of an instruction on felony-murder in the second degree, even though there had been no request for the instruction at trial. In each of these cases, however, the predicate felony for the charge of felony-murder in the second degree was itself the subject of a separate indictment. See *Commonwealth* v. *Bell, ante* 294, 295 (2011); *Commonwealth* v. *Rego*, 360 Mass. 385, 393-394 (1971).

[11]In addition to being improperly raised, the defendant's argument is without

merit. The predicate felony in a felony-murder conviction does merge with the felony-murder and may not carry a separate sentence. *Commonwealth* v. *Gunter*, 427 Mass. at 275-276. In this case, however, the underlying felony in the felony-murder conviction was attempted armed robbery. See *Stokes*, 440 Mass. at 750. There was no indictment charging the defendant with this offense, and he received no separate sentence on it. Armed home invasion was a separate, independent crime of which the defendant was convicted and thereafter properly sentenced.